UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACKSON NATIONAL LIFE
INSURANCE COMPANY,

    Plaintiffs,

v.                                      Case No: 8:18-cv-1401-23AAS

SUN COAST TRUST COMPANY,
INC., et al.,

    Defendants.
_____/

**ORDER**

Jackson National Life Insurance Company (Jackson) moves to dismiss Eloy Aguirre's counterclaim and requests an order of interpleader, to deposit funds into the court's registry, and for attorney's fees and costs. (Docs. 24, 25).

**I.    BACKGROUND**[1]

This action seeks to determine the beneficiary of a single premium deferred annuity, policy number 0032722400, issued by Jackson to Nikki G. Heisler on September 7, 1990. (Doc. 15, ¶¶ 6–7). Originally, Ms. Heisler designated her husband, Kenneth W. Heisler, as the sole beneficiary of the policy proceeds. (Doc. 15, ¶ 10).

To change beneficiaries, the policy requires:

> While this Policy is in force, the Owner may change the Beneficiary, unless otherwise provided by endorsement. This may be done by filing at the Home Office of the

---

[1] The factual background is presented as it is alleged in Mr. Aguirre's counterclaim. (Doc. 15).

> Company an acceptable written request. Such change will
> be subject to any existing assignment of this Policy and will
> take effect on the date the notice was signed. Any proceeds
> paid before a change of Beneficiary is recorded will not be
> subject to the change.

(Doc. 15-1, p. 3). After Mr. Heisler passed away, Ms. Heisler provided Jackson with an annuity service request form designating her grandson Christopher K. Kallimanis and her son Christ J. Kallimanis as revocable beneficiaries under the policy. (Doc. 15, ¶ 13).

On June 21, 2012, Ms. Heisler sent Jackson a notarized annuity service request form designating Mr. Aguirre as the sole irrevocable beneficiary of the policy proceeds.[2] (Doc. 15-2). The irrevocable beneficiary designation states:

> [T]he named irrevocable beneficiary obtains a vested interest in this Contract and must sign (along with the Owner) for any future changes to, surrender of, withdrawals from, or transfer of this annuity Contract as requested by the Owner, including a change of the named irrevocable beneficiary.

(Doc. 1-5). On June 28, 2012, Jackson sent a letter to Ms. Heisler acknowledging receipt of Ms. Heisler's annuity service request form. (Doc. 15-3). On July 13, 2012, Jackson sent another letter to Ms. Heisler advising her that Mr. Aguirre's signature was required on the form. (Doc. 15-4). Mr. Aguirre executed and returned the form to Jackson. (Doc. 15, ¶ 35).

---

[2] According to Mr. Aguirre's counterclaim, Ms. Heisler and Mr. Aguirre were in a romantic relationship from 2007 until Ms. Heisler's death in 2018. (Doc. 15, ¶¶ 16, 20). Mr. Aguirre was also Ms. Heisler's primary caregiver. (*Id.* at ¶ 22). The nature of their relationship, however, is not relevant to the issues in these motions.

On November 2, 2012, Ms. Heisler sent Jackson another annuity service request form, but this time designated the Nikki Heisler Living Trust as the sole beneficiary of the policy, with Sun Coast Trust Company, Inc. (Sun Coast) as trustee. (Doc. 1-4). On November 5, 2012, Jackson contacted Ms. Heisler to inform her Mr. Aguirre's signature was needed to make this change because he was the sole irrevocable beneficiary of the policy. (Doc. 15, ¶ 40).

On November 6, 2012, Ms. Heisler's financial advisor, Hendrickson & Hendrickson, Inc. n/k/a The Hendrickson Advisory Group, Inc. (Hendrickson), sent Jackson a letter stating Ms. Heisler's signature on the June 21, 2012 annuity service request form designating Mr. Aguirre as the sole irrevocable beneficiary of the policy was a forgery. (Doc. 1-5). Hendrickson instructed Jackson to change the beneficiary of the policy to the living trust and transfer $20,000.00 payments monthly to Ms. Heisler's checking account. (*Id.*). On November 19, 2012, Ms. Heisler allegedly signed an affidavit attesting she had not "written nor authorized" designating Mr. Aguirre as the sole irrevocable beneficiary of the policy, and that her signature on the June 21, 2012 annuity service request form was a forgery. (Doc. 1-6). Mr. Aguirre asserts Ms. Heisler's November 19, 2012 affidavit was itself a forgery. (Doc. 15, ¶ 42).

After receiving Hendrickson's written notice of a forgery, and Ms. Heisler's forgery affidavit, Jackson changed the policy beneficiary from Mr. Aguirre to Ms. Heisler's living trust and disbursed $20,000.00 to her checking account. (*Id.* at ¶¶ 44, 46). The living trust remained the sole beneficiary of the policy until Ms. Heisler

passed away nearly five years later, on January 5, 2018. Mr. Aguirre alleges he was never notified about any of the communications between Hendrickson and Jackson regarding the change in beneficiaries or the forgery allegations. (*Id.* ¶ 50). He also alleges Jackson never contacted him about the forgery allegations or any challenge to Ms. Heisler designating him the irrevocable beneficiary of the policy. (*Id.* ¶ 51).

The policy provides:

> Upon receipt of due proof of the death of the Annuitant prior to the Maturity Date, the Company will pay to the Beneficiary, no later than two months after receipt of such proof, the Death Benefit Proceeds.

(Doc. 15-1, p. 3). After Ms. Heisler's January 2018 death, Mr. Aguirre contacted Jackson and requested payment of the policy proceeds to him as sole irrevocable beneficiary. (Doc. 15, ¶ 63).

On June 11, 2018, Jackson filed a complaint for interpleader against Mr. Aguirre and trustee Sun Coast for the court to resolve the competing claims for the policy proceeds. (Doc. 1). Sun Coast and Mr. Aguirre filed competing cross-claims (Docs. 8, 18), and Mr. Aguirre filed a counterclaim against Jackson (Doc. 15, pp. 6–17). Mr. Aguirre's counterclaim alleges causes of action against Jackson for breach of contract, tortious interference with an expectancy, and breach of fiduciary duty. (*Id.* at pp. 6–18).

Jackson seeks dismissal of Mr. Aguirre's counterclaim on three grounds. (Doc. 24). First, Jackson contends Mr. Aguirre's claim for damages related to Jackson's November 2012 disbursement of $20,000.00 in policy funds to Ms. Heisler's checking

4

account is barred by Florida law. (*Id.* at pp. 4–6). Next, Jackson argues Mr. Aguirre's counterclaim is subject to dismissal because the claims overlap with the claims in Jackson's interpleader complaint. (*Id.* at pp. 6–8). Finally, Jackson argues Mr. Aguirre's causes of action in its counterclaim are improperly pleaded. (*Id.* at pp. 8–15). Mr. Aguirre opposes the motion. (Doc. 32).

Jackson also moves for an order of interpleader to direct the subject policy proceeds be deposited into the court's registry, dismiss Jackson from this action, and award attorney's fees and costs incurred in filing this action. (Doc. 25). Mr. Aguirre agrees the policy proceeds should be deposited into the court's registry, but opposes Jackson's dismissal from this action and an award of attorney's fees and costs. (Doc. 33).

## II. ANAYLSIS

The court will address Jackson's motion for order of interpleader (Doc. 25) and Jackson's motion to dismiss Mr. Aguirre's counterclaim (Doc. 24), respectively.

### A. Motion for Order of Interpleader

Jackson seeks an order of interpleader discharging Jackson from this action, granting leave to deposit the policy proceeds into the court's registry, and awarding attorney's fees and costs. (Doc. 25, pp. 9–10). In response, Mr. Aguirre contends Jackson is not entitled to interpleader relief because it is not a disinterested stakeholder and Jackson did not timely bring this interpleader action. (Doc. 31, pp. 3–6). Mr. Aguirre also argues Jackson's attorney's fees and costs arose in the

5

ordinary course of business, so its request for fees and costs should be denied. (*Id.* at pp. 6–8).

### 1.     **Legal Standard**

Under Rule 22 of the Federal Rules of Civil Procedure, "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Interpleader "allows a stakeholder to bring an action joining two or more adverse claimants to a single fund." *John Alden Life Ins. Co. v. Vanlandingham*, No. 5:04-CV-538-OC-10GRJ, 2006 WL 1529047, *4 (M.D. Fla. May 30, 2006) (citing *In re Mandalay Shores Coop. Housing Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994) ("Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner.").

There are two stages to an interpleader action. "In the first stage, the Court determines whether the plaintiff has satisfied the requirements for interpleader. In the second stage, the Court determines the rights and interests of the claimants to the disputed property." *N.Y. Life Ins. Co. v. Snyder*, No. 5:11-CV-618-Oc-34TBS, 2012 WL 1600157, *1 (M.D. Fla. Feb. 7, 2012) (internal citations omitted). "[T]he burden is on the party seeking interpleader to demonstrate that he is entitled to it," or, "that he has been or may be subjected to adverse claims." *Ohio Nat. Life Assur. Corp. v. Langkau ex rel. Estate of Langkau*, 353 F. App'x 244, 249 (11th Cir. 2009) (quoting *Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974)).

6

"It is a generally accepted principle that a *disinterested* stakeholder filing an action in interpleader may be dismissed from the case, discharged from further liability, and, in the court's discretion, awarded attorneys' fees and costs." *Southtrust Bank of Fla., N.A. v. Wilson*, 971 F. Supp. 539, 542 (M.D. Fla. 1997) (quoting *Kurland v. United States*, 919 F. Supp. 419, 421 (M.D. Fla. 1996)) (emphasis added). Thus, a party seeking interpleader must be free from blame in causing the controversy, and where it is a wrongdoer, it is not disinterested and cannot receive relief by interpleader. *See Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 263 (3d Cir. 2009).

2. **Disinterested Stakeholder**

Mr. Aguirre contends Jackson is not a disinterested stakeholder because it changed policy beneficiaries from Mr. Aguirre as a sole irrevocable beneficiary to Ms. Heisler's living trust without Mr. Aguirre's knowledge or consent. (Doc. 31, pp. 3–4). Jackson then made a $20,000.00 policy disbursement to the living trust without Mr. Aguirre's knowledge or consent. (*Id.*). In addition, Mr. Aguirre alleges Jackson is not a disinterested stakeholder because it knew about the existence of competing claims in 2012—when Ms. Heisler was still alive—and inexplicably delayed in seeking interpleader relief until years later and after Ms. Heisler died. (*Id.* at pp. 5–6).

Interpleader protects "only from the prospect of multiple litigation and does not automatically immunize a stakeholder from liability." *See Kowalski v. Jackson Nat. Life Ins. Co.*, No. 12-60597-CIV, 2013 WL 3308332, at *5 (S.D. Fla. July 1, 2013) (quoting *Graziosi v. MetLife Investors USA Ins. Co.*, No. 3:11-CV-80 (CAR), 2013 WL 592394, at *4 (M.D. Ga. Feb. 14, 2013)). Thus, a stakeholder may be liable "for

diminishing the value of the interpleaded stake simply because of the presence of an unrelated dispute as to who is its rightful owner" or "liable for its investigation of ownership of the stake, at least where defects in its investigation can plausibly be blamed for the existence of the underlying ownership controversy." *Id.* (quoting *Hovis*, 553 F.3d at 265–66).

Here, Jackson may not be a disinterested stakeholder because it may be liable to Mr. Aguirre for changing the policy beneficiary from Mr. Aguirre to the living trust and making a $20,000.00 policy disbursement without Mr. Aguirre's knowledge or consent, thus diminishing the value of the policy. (Doc. 31, pp. 3–4). Based on Mr. Aguirre's allegations, Jackson seemingly failed to conduct any investigation regarding the forgery allegations, failed to inform Mr. Aguirre about the forgery allegations or competing beneficiary designation, and failed to seek a timely judicial determination of the policy beneficiary. Indeed, Jackson was on notice of competing claims to the policy in November 2012 and did not file this action until June 2018. (Doc. 1). Thus, at this stage of the litigation, Jackson remains an interested party and interpleader relief is not appropriate.

Similar to this action, in *Hauger v. John Hancock Life Ins. Co.*, the plaintiff filed a complaint seeking a declaration that she was the beneficiary of an annuity policy issued by John Hancock Life Insurance Company (John Hancock). No. 8:07-CV-1711-T-EAJ, 2008 WL 341432, *1–2 (M.D. Fla. Feb. 5, 2008). The plaintiff contended that the owner of the annuity policy, now deceased, properly prepared and mailed a designation of the plaintiff as the new primary beneficiary of the policy. *Id.*

8

However, John Hancock failed to admit receipt of the designation and update the beneficiary designation. *Id.* John Hancock filed a counterclaim for interpleader and moved for discharge from the action. *Id.* The court declined to discharge John Hancock from liability until certain discovery was conducted as to the receipt of the change of designation request and failure to update the policy designation. *Id.* at *5–7. Similarly, additional discovery is necessary here.

Due to the remaining questions regarding the competing forgery allegations, the alleged lack of investigation surrounding those alleged forgeries, and the subsequent change in beneficiaries and payment made without notice to Mr. Aguirre, it is premature to discharge Jackson from this action without further discovery.

### 3. Deposit Funds into Court Registry

Jackson's request to deposit the policy proceeds into the court's registry is unopposed. (*See* Doc. 33, p. 3). There is no reason why the funds should not be deposited into the court's registry. Jackson's request to deposit the policy proceeds is granted.

### 4. Attorney's Fees and Costs

"In an interpleader action, costs and attorney's fees are generally awarded, in the discretion of the court, to the plaintiff who initiates the interpleader as a mere disinterested stakeholder." *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497 (11th Cir.1986) (citing *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1311 (5th Cir. 1980)). However, "there is no right for the stakeholder to recover costs and attorney's fees." *Unum Life Ins. Co. of Am. v. Kaleo*, No. 6:05-CV-544-Orl-22DAB, 2006 WL

1517257, at *2 (M.D. Fla. May 24, 2006) (quoting *Life Investors Ins. Co. of Am. v. Childs*, 209 F. Supp. 2d 1255, 1256 (M.D. Ala. 2002)).

As Jackson's motion for discharge is denied as premature, so is its request for attorney's fees and costs. The denial of the request as premature, however, does not presume Jackson will be entitled to fees in this case. Notably, one factor courts may consider in determining if an award of attorney's fees and costs is appropriate is whether the stakeholder's interpleader claim arises out of the normal course of business of an insurance company. *See In re Mandalay Shores Coop. Housing Ass'n*, 21 F.3d at 383 (citing cases). And, courts have also considered whether the stakeholder was protecting its own self-interest in filing the interpleader action. *See Hauger*, 2008 WL 341432, at *4.

### B. Motion to Dismiss

Jackson moves to dismiss Mr. Aguirre's counterclaim because Section 627.423, Florida Statutes, bars Mr. Aguirre's claim for damages incurred by Jackson's $20,000.00 policy disbursement made to Ms. Heisler's checking account in November 2012. (Doc. 24, pp. 4–6). In addition, Jackson maintains Mr. Aguirre's claims are duplicative and are barred by this interpleader action. (*Id.* at pp. 6–16). Last, Jackson asserts Mr. Aguirre has not properly pleaded his claims.

#### 1. Florida Statute § 627.423

Jackson argues Section 627.423, Florida Statutes, bars Mr. Aguirre's counterclaim for damages incurred by Jackson's $20,000.00 policy disbursement made to Ms. Heisler's checking account in November 2012. (Doc. 24, pp. 4–6). In

response, Mr. Aguirre contends Section 627.423 does not apply to the $20,00,00.00 policy disbursement because Jackson did not act under the policy terms when changing beneficiaries and making the disbursement without Mr. Aguirre's knowledge or consent. (Doc. 32, pp. 7–11)

Section 627.423, Florida Statutes, states:

> Whenever the proceeds of or payments under a life or health insurance policy or annuity contract become payable in accordance with the terms of such policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment thereof in accordance with the terms of the policy or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract or by such assignment as being entitled thereto shall be entitled to receive such proceeds or payments and to give full acquittance therefor; and such payments shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that such other person claims to be entitled to such payment or some interest in the policy or contract.

Thus, an insurer is discharged from any action resulting from its policy payment *if*: (1) the payment was made in accordance with the policy terms *and*, (2) the insurer did not receive written notice that another person claims to be entitled to the payment or has some interest in the policy. *Id.* (emphasis added).

Mr. Aguirre argues he was the sole irrevocable beneficiary of the policy when Jackson disbursed $20,000.00 to Ms. Heisler's checking account in November 2012. (Doc. 24, pp. 4–6). Under the policy terms, Mr. Aguirre's signature was required for any change in beneficiary or disbursement. (*See* Doc. 15-1, p. 3). Because Mr. Aguirre

11

did not authorize the change of beneficiary from himself to Ms. Heisler's living trust, the $20,000.00 disbursement was not made under the terms of the policy. In addition, due to Ms. Heisler's completing notarized affidavits, Jackson was on notice there were competing interests in the policy.

As Mr. Aguirre contends, *Schwartz v. Guardian Life Ins. Co. of Am.*, 73 So. 3d 798 (Fla. 4th DCA 2011) and *Fortis Benefits Ins. Co. v. Pinkley*, 926 So. 2d 981 (Ala. 2005) are inapplicable to this action because they address situations where the insurer relied on a forged beneficiary designation—not on forgery allegations to disregard a beneficiary designation. (Doc. 32, pp. 8–10). In addition, *Fortis* contemplates a situation where there is no reason to question the authenticity or validity of the document. 926 So. 2d at 989 ("[W]here an insurer in good faith pays life-insurance benefits in reliance on a forged change-of-beneficiary request form, *which appears regular in all respects*, the insurer is fully discharged from all claims under the policy or contract.") (emphasis added) (internal quotation omitted). That is not the case here.

Taking Mr. Aguirre's allegations as true, Jackson issued a policy payment of $20,000.00 to Ms. Heisler's checking account contrary to the terms of policy and Mr. Aguirre's interest in the policy. Thus, Section 627.423, Florida Statutes, does not require dismissal of Mr. Aguirre's counterclaim.

### 2. Interpleader Allegations Do Not Bar Counterclaim

Although a counterclaim may be disfavored in interpleader actions, that is only the case when the interpleader action is deemed maintainable. *See Harris Corp. v.*

*Dunn*, No. 6:05-CV-1388-ORL-19DAB, 2006 WL 2691541, at *11 (M.D. Fla. Aug. 25, 2006), report and recommendation adopted, No. 6:05-CV-1388-ORL-19DAB, 2006 WL 2787853 (M.D. Fla. Sept. 19, 2006); *see also Nat'l Life Ins. Co. v. Alembik-Eisner*, 582 F. Supp. 2d 1362, 1369 (N.D. Ga. Sept. 12, 2008) (noting that "the mere filing of the interpleader action does not immunize the insurer from state law counterclaims filed by a claimant") (internal quotation omitted). "[T]he decision to discharge a stakeholder and thus reject those claims against it depends instead on whether the [claims] are independent of the reason for the filing of the interpleader action." *Graziosi v. MetLife Investors USA Ins. Co.*, No. 3:11-CV-80(CAR), 2013 WL 592394, at *4 (M.D. Ga. Feb. 14, 2013) (internal quotation, citation, and footnote omitted); *see also Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1011 (9th Cir. 2012) (observing that "where the stakeholder may be independently liable to one or more claimants, interpleader does not shield the stakeholder from tort liability, nor from liability in excess of the stake").

"It is generally recognized that interpleader developed in equity and is governed by equitable principles." *Lee*, 688 F.3d at 1012 (internal quotation marks and citations omitted). The United States Court of Appeals for the Third Circuit has observed:

> [W]here a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy. That does not mean, for instance, that a stakeholder is free from liability for diminishing the value

13

> of the interpleaded stake simply because of the presence of an unrelated dispute as to who is its rightful owner. Our decision here is even potentially consistent with holding a stakeholder liable for its investigation of ownership of the stake, at least where defects in its investigation can plausibly be blamed for the existence of the underlying ownership controversy.

*Hovis*, 553 F.3d at 265–66 (citations and footnote omitted).

The United States Court of Appeals for the Ninth Circuit concluded an interpleader action did not bar a claim that the stakeholder's actions caused the controversy. *Lee*, 688 F.3d at 1012-13. The court observed "interpleader was not intended to extinguish independent tort claims, nor intended to relieve the stakeholder from liability in excess of the stake." *Id.* at 1012. The Ninth Circuit observed:

> The district court's holding to the contrary threatens to convert the interpleader action into a species of get-out-of-jail-free card, a device that would shield tortfeasors from liability for their negligent mistakes and limit their total financial exposure to the value of the stake. As the Supreme Court explained ..., this was never the intention of the interpleader remedy.

*Id.* "[A] stakeholder whose alleged tort caused the controversy is not absolved of liability by filing an interpleader action." *Id.* at 1014. Here, as explained supra, interpleader is premature. Accordingly, dismissal of Mr. Aguirre's counterclaim simply because a counterclaim is disfavored in interpleader actions is not warranted.

### 3. Counterclaim's Causes of Action Are Sufficiently Pleaded

In considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court's analysis is generally limited to the four corners of the counterclaim and any

attached exhibits. *See Grossman v. Nationsbank*, 225 F.3d 1228, 1231 (11th Cir. 2000). The court must accept the non-moving party's well-pleaded facts as true and construe them in the light most favorable to that party. *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) (citing *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (*en banc*)).

To survive a motion to dismiss, the counterclaim must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The issue is not whether the plaintiff will ultimately prevail, but "whether the [plaintiff] is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183 (1984)).

Mr. Aguirre pleads claims for breach of contract (count one), tortious interference with an expectancy (count two), and breach of a fiduciary duty. (Doc. 15). The elements for breach of contract are the existence of a contract, a breach of the contract, and damages resulting from the breach. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). The elements for tortious interference with an expectancy claim are the existence of an expectancy, intentional interference with the expectancy through tortious conduct, causation, and damages. *Whalen v. Prosser*,

719 So. 2d 2, 5 (Fla. 2d DCA 1998). The elements for breach of a fiduciary duty are the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by that breach. *Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A.,* 32 So. 3d 111, 116 n.2 (Fla. 2d DCA 2009). Even if a plaintiff cannot prove actual damages, a defendant may be liable for nominal damages when a fiduciary duty is breached. *Id.*

Here, Mr. Aguirre's allegations, viewed in the light most favorable to him, properly state claims for the three causes of action alleged against Jackson. Because Mr. Aguirre's allegations are sufficient, Jackson's motion to dismiss Mr. Aguirre's counterclaim is denied.

## III. CONCLUSION

Considering the foregoing, it is **ORDERED** that:

1. Jackson's Motion for Order of Interpleader (Doc. 25) is **GRANTED IN PART AND DENIED IN PART**:

    a. Jackson's request to be dismissed from this interpleader action is **DENIED without prejudice**;

    b. Jackson's request to deposit the subject policy proceeds in the court's registry is **GRANTED**; and

    c. Jackson's request for attorney's fees and costs is **DENIED without prejudice**.

2. Jackson's Motion to Dismiss Counterclaim (Doc. 24) is **DENIED** and Jackson has until **May 8, 2009** to file its answer.

3. No later than **May 10, 2019**, the parties must discuss the deadlines in this case. If the parties seek to extend any case deadlines, they must request relief no later than **May 17, 2019**, preferably by joint motion.

**ENTERED** in Tampa, Florida on April 24, 2019.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge